# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RITE-HITE CORPORATION, ARBON
EQUIPMENT CORPORATION, and RITE-
HITE AFTERMARKET CORPORATION,

        Plaintiffs,

        v.                                Case No. 06–C–1187

DELTA T CORPORATION d/b/a BIG ASS
FANS and MECHANIZATION SYSTEMS
COMPANY, INC.,

        Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

### I. BACKGROUND

This action was commenced on November 15, 2006, when the plaintiffs, Rite-Hite Corporation ("Rite-Hite"), Arbon Equipment Corporation ("Arbon"), and Rite-Hite Aftermarket Corporation ("Aftermarket") filed a complaint naming Delta T Corporation d/b/a Big Ass Fans ("Delta T") and Mechanization Systems Company, Inc. ("MSC") as defendants. The plaintiffs assert that the action arises under the laws of the United States, specifically Title 35 of the United States Code. Thus, the court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1338(a). "Further, because this action presents an actual controversy with respect to the validity, infringement and/or unenforceability of the patents in suit, the Court may grant the declaratory relief sought pursuant to 28 U.S.C. §§ 2201 and 2202." (Compl. ¶ 2.)

More precisely, the plaintiffs claim that several U.S. Patents, all of which relate to large

diameter fans, to wit, U.S. Patent No. 6,244,821 ("the '821 patent"), U.S. Patent No. 6,589,016 ("the '016 patent"), and U.S. Patent No. 6,817,835 ("the '835 patent"), are assigned jointly to (and thus jointly owned by) Delta T and MSC. And, according to the plaintiffs,

> 18. Rite-Hite has announced plans to make, use, sell, and offer for sale large diameter fans in this judicial district and elsewhere and has made one or more such fans in this judicial district.

> 19. Defendants have threatened to sue Rite-Hite if it markets Rite-Hite's large diameter fans. In a meeting on November 15, 2006, Carey Smith, the president of Delta, told representatives of Rite-Hite that Delta would sue Rite-Hite if it makes, sells or offers for sale large diameter fans in competition with Big Ass Fans.

> 20. Based on Defendants' conduct, Rite-Hite now believes, in good faith, that Defendants will commence suit against Rite-Hite for patent infringement. An actual controversy exists between the parties as to the infringement of the '821, '016, and '835 patents by reason of Defendants' conduct and accusations.

> 21. Given that the patents in suit are jointly owned by Mechanization Systems and Delta T, the former is joined herein as a necessary party.

(Compl. ¶¶ 18-21.)

Each of the defendants has filed a motion to dismiss the complaint. Delta T claims that the court does not have subject matter jurisdiction over this action for the simple reason that the "[p]laintiffs cannot establish an 'actual controversy' because they cannot show that they have a reasonable apprehension of such a suit by Defendants. This is so, *inter alia*, because Defendants have no information concerning the nature or the specifications of Plaintiffs' supposed product – without which Defendants cannot even begin to contemplate possible infringement litigation against Plaintiffs." (Delta T Mem. at 1.) MSC's motion to dismiss is predicated on the same proposition. In addition, however, MSC's motion is also predicated on the assertion that the court does not have personal jurisdiction over MSC. More particularly, MSC asserts, in part, as follows:

2

With regard to personal jurisdiction, there are no allegations that MSC has "purposefully directed" its activities at residents of Wisconsin or that Rite-Hite's claim "arises out of or relates to" MSC's activities with Wisconsin. Even though Rite-Hite alleges that MSC "sells and offers to sell" fans in this judicial district, (para. 19), there are no allegations that any of these alleged sales relate in any way to Rite-Hite's declaratory judgment action. In other words, without any allegations that MSC has asserted infringement or threatened to sue Rite-Hite, the allegation of sales in this jurisdiction does not support personal jurisdiction for this action.

(MSC Mem. at 2.)

At the factual heart of the defendants' motions to dismiss for lack of subject matter jurisdiction is a verbal exchange that took place on November 15, 2006, at the offices of Delta T in Lexington, Kentucky, between Carey Smith, who is the president of Delta T, on the one hand, and Mike White, who is president of Rite-Hite, and Terry McGushin, who is president of Arbon, on the other hand. Prior to that meeting, Mike White left the following message on Carey Smith's voice mail.

Ah, hello, Carey. Mike White calling from Rite-Hite. Ah, we haven't uh talked in a long time, and I thought I'd give you a buzz in as much as I'm gonna be in your neck of the woods this week and was hopeful that ah we might chat for a little bit, uh uh preferably on Wednesday. Uh uh uh in the afternoon would be best for me, but ah ah I can make the morning work if I change some things around. Um so, um ah hopefully ah you'd you'd have an hour for me, if you wouldn't mind um ah giving me a buzz back 414-362-6393. I've got some meetings but there's voice mail on that if I if I don't pick it up and um um my cell phone is 414-350-5577. So, um, got some ideas and love to talk to you about them. Thanks a lot. Bye-bye.

(Smith Aff. ¶ 6.) The meeting was subsequently arranged to occur at 1:30 p.m. on November 15, 2006.

According to Carey Smith, the following occurred at that meeting.

8. Mr. White and Terry McGushin . . . arrived at my offices at 1:30 p.m. on November 15. Upon their arrival Mr. White announced that Arbon was terminating the Distribution Agreement, he told me that the [sic] the patents were invalid, and he suggested that Plaintiffs might design a competing product. Mr. White repeatedly

3

asked me what I was going to do in response, and I repeatedly told him that I would defend myself. One of the last times he asked me this, I asked him what he would do, and I told him, when he refused to answer, that I would expect he would defend himself.

9. I did not threaten litigation. I merely said that Delta T was prepared to defend its patent, and that Delta T would have to consult with its lawyers (with whom I had yet to consult because I had just that instant learned of Arbon's intention to terminate the Distribution Agreement).

10. Plaintiffs' representatives left within ten minutes of their arrival at my offices. Shortly after advising me that Arbon was terminating the Distribution Agreement, Mr. White handed me a letter, Exhibit B attached, and he invited me to call him if Delta T wanted to talk further about Arbon's termination of the distributorship or about Plaintiffs' future marketing plans.

11. Neither myself nor, to the best of my knowledge, anyone else at Delta T, has any idea of the nature or the specifications of the competing product that Plaintiffs are supposedly making and/or planning to make, and Delta T certainly had no such idea on November 15 when Plaintiffs filed their Complaint.

(Smith Aff. ¶¶ 8-11.)

Rite-Hite's version of what transpired during the course of the November 15 meeting is set

forth in the declaration of Terry McGushin, which states, in pertinent part, as follows.

6. Along with Michael White, President and CEO of Rite-Hite Holding Corporation, I traveled to Kentucky on November 15, 2006, to inform Carey Smith, the President of Delta T, that it was terminating the Distribution Agreement and, as that agreement required, to deliver a thirty day written notice of termination. A copy of that notice is appended as Exhibit B.

7. At the November 15 meeting, Mr. White explained our collective belief to Mr. Smith that the Fairbank article renders the patents-in-suit invalid, and that in connection with termination of the Distribution Agreement, Rite-Hite intended to manufacture and sell its own fans. Mr. White told Mr. Smith, "We are ending our relationship with you and getting into the fan business." I provided Mr. Smith with the termination notice identifying our new product as a high volume, low speed fan. . . .

8. I personally hoped that Mr. Smith would express an interest in an asset sale or some other creative business solution, at which point the parties would agree to a

litigation moratorium. We also knew, however, that when a Canadien company, Envira-North Systems, Ltd., had proposed that the patents were invalid and that it was manufacturing HVLS fans, and proposed a license, Delta T did not discuss the matter but claimed infringement almost as soon as its Canadien patent issued and accused Envira-North of extortion. For that reason, we felt that any resolution should be proposed by Delta T because we did not want to be accused of using "threats" to force it to do something it did not want to do.

. . . .

10. At the meeting, Mr. Smith acknowledged his prior awareness of the Fairbank article. Mr. Smith expressed his view that as to the Fairbank article, "he didn't think it was a problem," with respect to the patents-in-suit and that he believed the patents to be valid.

11. In response to Mr. Smith's statement regarding the validity of the patents-in-suit, Mr. White explained Rite-Hite's belief that the patents-in-suit are invalid. At that point, Mr. Smith responded, "That's what the legal system is for." Mr. Smith also said, "We are suing a Canadien company over the patent right now, I was just in court on Monday, so why wouldn't I defend against you?"

12. Later in the meeting Mr. Smith said, "What do you want me to say, if you get in the business I will have to defend myself legally. I will have to pursue it."

. . . .

14. As a result of the discussion that occurred on November 15, I believed that Delta T would sue Rite-Hite, Arbon and Aftermarket for infringement of the patents-in-suit as soon as it confirmed that we had made a HVLS fan. Because we had already done so (and did not know whether Mr. Smith had, or when he would, learn this), we believed that suit might come at any time.

(McGushin Decl. ¶¶ 6-8, 10-12, 14.)

According to Delta T and MSC, nothing that occurred during the course of the November 15 meeting could have created an objectively reasonable apprehension on the part of the plaintiffs that Delta T would initiate suit if the plaintiffs went forward with their stated plans to market a HVLS fan. Such being the case, there was no actual controversy at the time the plaintiffs filed this suit (the very same day as the conversation among Smith, White and McGurshin took place) and,

5

as a result, this court has neither the statutory nor the constitutional authority to hear this declaratory judgment action. By contrast, the plaintiffs maintain that the verbal exchange, coupled with the plaintiffs' knowledge of Delta T's litigation against a Canadian company alleging infringement of the same patents, created a reasonable apprehension on their part that they would face an infringement suit. Thus, at the time the action was commenced there was an actual controversy and, because there was, this court has subject matter jurisdiction over the action.

## II. DISCUSSION

A Rule 12(b)(1) motion to dismiss tests the federal jurisdiction of a complaint. *See* Fed. R. Civ. P. 12(b)(1). Federal jurisdiction is limited to cases of "actual controversy." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). This requirement, which the Declaratory Judgment Act explicitly acknowledges, see 28 U.S.C. § 2201, has its roots in Article III of the Constitution. *See* U.S. Const. art. III, § 2, cl. 1. In order for an actual controversy to exist, there must be a "definite and concrete" core dispute – one that touches the "legal relations of parties having adverse legal interests." *Aetna*, 300 U.S. at 240-41. Courts, in determining the question of federal jurisdiction in declaratory judgment actions, must evaluate whether an actual controversy exists at all stages of the litigation, including the action's filing date. *Arizonans for Official English*, 520 U.S. at 67; *Spectronics Corp. v. H.B. Fuller Co., Inc*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("later events may not create jurisdiction where none existed at the time of filing").[1]

---

[1] Because this case arises under patent law, the court is to apply the substantive law of the Federal Circuit. *Vanguard Research, Inc. v. PEAT, Inc*., 304 F.3d 1249, 1254 (Fed. Cir. 2002). With respect to procedural issues not unique to patent law, the court is to apply Seventh Circuit precedent. *Id.*

6

Plaintiffs bear the burden of proving the existence of subject matter jurisdiction. *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). In analyzing a Rule 12(b)(1) motion, the court may look beyond the pleadings. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Int'l Harvester Co.*, 623 F.2d at 1210. The court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Long*, 182 F.3d at 554; *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980).

In patent cases, the Federal Circuit has held that courts are to apply a two-part test to determine whether there is an actual controversy in suits requesting a declaration of patent non-infringement or invalidity. First, the plaintiff must actually produce or be prepared to produce an allegedly infringing product. Second, the patentee's conduct must have created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity is question continues. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996). Notably, since its issuance of the *EMC Corp*. decision the Federal Circuit seems to have made the second part of the test even more demanding. More precisely, in *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005), the court stated:

> In order for this case to be one fit for judicial review, Teva must be able to demonstrate that it has a reasonable apprehension of *imminent* suit. Whether there is an "actual controversy" between parties having adverse legal interests depends upon whether the facts alleged show that there is a substantial controversy between the parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty*, 312 U.S. at 273, 61 S.Ct. 510. This requirement of imminence reflects the Article III mandate that the injury in fact be "concrete," and "actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

7

*Teva*, 395 F.3d at 1333.[2]

The parties do not dispute that Rite-Hite satisfies the first part of the test. Thus, the only question for this court to resolve is whether Delta T's conduct placed Rite-Hite in reasonable apprehension that it would be sued for infringing Delta T's patent rights. To put a putative infringer in reasonable apprehension of suit does not require an express charge of infringement and threat of suit; rather, such apprehension may be induced by subtler conduct if that conduct rises "to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent," i.e., to initiate an infringement action. *EMC*, 89 F.3d at 811, *citing Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).

"A certain minimum degree of adverseness must be present in order to establish the requisite controversy." *Id*. "[M]ore is required that the existence of an adversely held patent." *BP Chemicals Ltd. v. Union Carbide Corp*., 4 F.3d 975, 978 (Fed. Cir. 1993). "But when the patentee takes steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief." *EMC*, 89 F.3d at 811.

> To be sure, any time parties are in negotiation over patent rights, the possibility of a lawsuit looms in the background. No patent owner with any sense would open negotiations by assuring his opposite party that he does not intend to enforce his patent rights under any circumstances. The threat of enforcement - either directly by the patentee or indirectly by a third party to whom the patentee licenses or sells the patent - is the entire source of the patentee's bargaining power. *See Shell*

---

[2] Less than two months ago, however, the United States Supreme Court strongly hinted that it was calling into question the continued viability of "the Federal Circuit's 'reasonable apprehension of suit' test (or in its evolved form, the 'reasonable apprehension of *imminent* suit' test," in patent declaratory judgment actions. *See Medimmune , Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 774, n. 11 (2007). The impact of the *Medimmune* decision on this court's ruling on the defendants' motions to dismiss will be discussed in more detail later in this decision.

8

*Oil*, 970 F.2d at 888, 23 USPQ2d at 1631 (patentee, if asked whether it intends to enforce its patent must answer "yes" if it hopes to negotiate a license). Thus, it is unrealistic to suggest that some negotiating patentees intend to enforce their patents while some do not, and that the first group is subject to declaratory judgment actions while the second is not.

This court's two-part test for declaratory judgment jurisdiction is designed to police the sometimes subtle line between cases in which the parties have adverse interests and cases in which those adverse interests have ripened into a dispute that may properly be deemed a controversy. The test for finding a "controversy" for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling. The need to look at substance rather than form is especially important in this area, because in many instances (as in this case) the parties are sensitive to the prospect of a declaratory judgment action and couch their exchanges in terms designed either to create or defeat declaratory judgment jurisdiction. In the end, the question is whether the relationship between the parties can be considered a "controversy," and that inquiry does not turn on whether the parties have used particular "magic words" in communicating with one another.

*EMC*, 89 F.3d at 811-12.

Under Federal Circuit law, of some significance in assessing the objective reasonableness of a declaratory judgment plaintiff's apprehension of suit is whether (as in the instant case) it was the plaintiff who approached the patentee. *See Shell Oil*, 970 F.2d at 888 (no apprehension of suit where patentee was approached by declaratory judgment plaintiff, and patentee merely defended the validity of its patent in negotiations). Indeed, the court in *EMC* noted that "[t]he *Shell Oil* case exemplifies the broader principle that a declaratory judgment action should not be used to force unwanted litigation on 'quiescent patent owners.'" *EMC*, 89 F.3d at 812 ( quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).

Having set forth the general principles to be applied to the issues presented in the instant case, at least as they are defined by the Federal Circuit, it is now necessary to return to the matter referenced in footnote number 1, above. After all, if, as the Supreme Court hinted in *Medimmune*,

9

the second part of the Federal Circuit's two-part test for determining whether there is an actual controversy in suits requesting a declaration of patent non-infringement or invalidity is no longer viable, then it would seem that this court must apply the test discussed by the Supreme Court in *Medimmune* in determining whether it has subject matter jurisdiction over this declaratory judgment action. Such being the case, a discussion of *Medimmune* is now appropriate.

In *Medimmune*, a licensee (Medimmune) sued the patentee (Genentech, Inc.) for relief under the Declaratory Judgment Act. More precisely Medimmune claimed, *inter alia*, that Genentech's patent was invalid and that, therefore, Medimmune should not be required to continue to make license payments to Genentech under a certain licensing agreement. Notably, Medimmune did not cease making the license payments while it sought declaratory relief. It was for that reason that the District Court granted Genentech's motion to dismiss, ruling that the court did not have subject matter jurisdiction because, relying on the decision of the Federal Circuit in *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004), there was no case or controversy. *Gen-Probe* had held that a patent licensee in good standing cannot establish an Article III case or controversy with regard to validity, enforceability, or scope of the patent because the license agreement "obliterate[s] any reasonable apprehension" that the licensee will be sued for infringement. *Gen-Probe*, 359 F.3d at 1381. The Federal Circuit affirmed the District Court, also relying on *Gen-Probe*. *Medimmune v. Genentech*, 427 F.3d 958 (Fed. Cir. 2005). The Supreme Court reversed, holding that a licensee such as Medimmune "was not required, insofar as Article III is concerned, to break or terminate its 1997 license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." *Medimmune*, 127 S.Ct. at 777.

In reaching its decision the Supreme Court examined in some modest detail its declaratory

10

judgment jurisprudence. In doing so, the Court noted that *Altvater v. Freeman*, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed.2d 1450 (1943) was close on its facts to the facts presented in *Medimmune*. In *Altvater* the court held that a licensee's failure to cease its payment of royalties did not render nonjusticiable a dispute over the validity of a patent.

> In that litigation, several patentees had sued their licensees to enforce territorial restrictions in the license. The licensees filed a counterclaim for declaratory judgment that the underlying patents were invalid, in the meantime paying "under protest" royalties required by an injunction the patentees had obtained in an earlier case. The patentees argued that "so long as [licensees] continue to pay royalties, there is only an academic, not a real controversy, between the parties." *Id.*, at 364, 63 S.Ct. 1115. We rejected that argument and held that the declaratory-judgment claim presented a justiciable case or controversy: "The fact that royalties were being paid did not make this a 'difference or dispute of a hypothetical or abstract character.'" *Ibid.* (quoting *Aetna*, 300 U.S., at 240, 57 S.Ct. 461). The royalties "were being paid under protest and under the compulsion of an injunction decree," and "[u]nless the injunction decree were modified, the only other course [of action] was to defy it, and to risk not only actual but treble damages in infringement suits." 319 U.S., at 365, 63 S.Ct. 1115. We concluded that "the requirements of [a] case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature or the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." *Ibid.*

*Medimmune*, 127 S.Ct at 773. The Court proceeded to observe that it was not the fact that there had been a court injunction that made the controversy in *Altvater* justiciable. To the contrary, it noted that the *Altvater* court

> cited approvingly a treatise which said that an "actual or threatened serious injury to business or employment" by a private party can be as coercive as other forms of coercion supporting restitution actions at common law; and that "[t]o imperil a man's livelihood, his business enterprises, or his solvency, [was] ordinarily quite as coercive as, for example, "detaining his property." F. Woodward, The Law of Quasi Contracts § 218 (1913), cited in *Altvater, supra*, at 365, 63 S.Ct. 1115.

*Medimmune*, 127 S.Ct. at 774.

> Of particular significance to the issue presented by the defendants' motions to dismiss in the

instant case are the Supreme Court's observations set forth in footnote 11 of the *Medimmune* decision. There the Court stated:

> Even if *Altvater* could be distinguished as an "injunction" case, it would still contradict the Federal Circuit's "reasonable apprehension of suit" test (or, in its evolved form, the "reasonable apprehension of *imminent* suit" test, *Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (2005)). A licensee who pays royalties under compulsion of an injunction has no more apprehension of imminent harm than a licensee who pays royalties for fear of treble damages and an injunction fatal to his business. The reasonable-apprehension-of-suit test also conflicts with our decisions in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), where jurisdiction obtained even though the collision-victim defendant could not have sued the declaratory-judgment plaintiff-insurer without first obtaining a judgment against the insured; and *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 81 L.Ed. 617 (1937), where jurisdiction obtained even though the very reason the insurer sought declaratory relief was that the insured had given no indication that he would file suit. It is also in tension with *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), which held that appellate affirmance of a judgment of noninfringement, eliminating any apprehension of suit, does not moot a declaratory judgment counterclaim of patent invalidity.

*Medimmune*, 127 S.Ct. at 774, n. 11.

The bottom line is that the Supreme Court has called into serious question the continued viability of the Federal Circuit's "reasonable apprehension of suit" test in patent declaratory judgment actions. In light of such fact, this court is reluctant to employ that test in ruling on the defendants' motions to dismiss. Indeed, to do so would be to ignore the Supreme Court's clear signal that such test has a limited future life expectancy. Instead, in ruling on the defendants' motions this court will rely on the Supreme Court's most recent remarks on subject matter jurisdiction in the context of declaratory judgment actions:

> *Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not. Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and

12

that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what that law would be upon a hypothetical state of facts." . . . "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Medimmune*, 127 S.Ct. at 771 (citations omitted).

Applying the foregoing principles to the facts in the case at bar leads me to conclude that the defendants' motions to dismiss for lack of subject matter jurisdiction should be denied. Simply stated, the facts alleged in the complaint, which are augmented by the McGushin declaration and the Smith affidavit, demonstrate that the parties dispute whether Delta T's patent is valid and enforceable. To be sure, whether Smith's remarks could have given rise to an objectively reasonable apprehension by the plaintiffs of *imminent* suit if they went forward with their stated plans to market a HVLS fan is debatable. What is not debatable, however, are the following facts: (1) Rite-Hite (through its sister company, Arbon) had an agreement with Delta T to distribute Delta T's fans; (2) on November 15, 2006, Rite-Hite gave notice to Delta T that it was terminating that agreement; (3) Rite-Hite intends to manufacture and market a fan which will be in competition with the fan manufactured by Delta T, and for which Delta T has patents; (4) Rite-Hite has notified Delta T that it believes Delta T's patents to be invalid; and (5) Delta T has stated that it intends to defend its patents. In my opinion, such a set of facts demonstrates there to be a dispute extant between the plaintiffs and the defendants of a "definite and concrete [character], touching the legal relations of parties having adverse legal interests." *Medimmune*, 127 S.Ct at 771 (quoting *Aetna,* 300 U.S. at 240-241). Stated another way, "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

13

reality to warrant the issuance of a declaratory judgment." *Id*. Accordingly, to the extent that the defendants' motions to dismiss are predicated on the proposition that the court lacks subject matter jurisdiction over this action because there is no case or controversy, their motions will be denied.

As previously stated, MSC's motion includes an argument that the court lacks personal jurisdiction over MSC. Additionally, MSC argues that it is not a necessary party to the litigation. In that latter regard, MSC asserts that, although MSC owns jointly with Delta T the patents-in-suit,

> MSC does not need to be in the case for Rite-Hite to proceed against Delta T alone. MSC and Delta T have agreed that if Delta T, for example, desires to enforce a patent infringement case against a third party, then, after notice to MSC, Delta T can do so on its own, at its sole expense, make all decisions relative to the prosecution, and shall not share any proceeds from such an action, if successful, with MSC.

(MSC Mot. at 4.)

The Federal Circuit has created a two-part test to determine whether a court has personal jurisdiction over an out-of-state defendant in a patent case. First, the plaintiff must show that the forum state's long-arm statute, in this case, Wis. Stat. § 801.05, establishes personal jurisdiction over the defendant. Second, the plaintiff must show that due process is satisfied. *Tecre Co. v. Buttonpro, Inc.*, 387 F. Supp. 2d 927, 930 (E.D. Wis. 2005) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).

In determining whether Wisconsin's long-arm statute applies, a federal court defers to the interpretation of the statute by the state courts. *Id.* (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1358 (Fed. Cir. 1998). The Wisconsin Supreme Court has held that the Wisconsin long-arm statute should be given a liberal construction in favor of exercising jurisdiction. *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979). Moreover, the Wisconsin Supreme Court has held that the long-arm statute provides jurisdiction to

14

the "full extent consistent with the requisites of due process of law." *Id*.

Under the Wisconsin long-arm statute, "personal jurisdiction over a non-resident defendant may either be specific or general." *Tecre Co.*, 387 F. Supp. 2d at 930. "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)). "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *Id*.

Rite-Hite asserts that the sale of MSC fans in Wisconsin gives this court general jurisdiction over MSC under Wis. Stat. § 801.05(1)(d). Under Wis. Stat. § 801.05(1)(d), a court of Wisconsin has personal jurisdiction over a person who "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." In its Complaint, Rite-Hite alleges that the defendants "have systematic and not isolated activities in this judicial district," and that "[t]he defendants sell and offer for sale products, including large diameter fans, in this judicial district." (Compl. ¶ 3.)

For purposes of determining the existence of personal jurisdiction, the court takes "all of the plaintiff's factual allegations that are not directly controverted as being true." *Tecre Co.*, 387 F. Supp.2d at 931 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994)). The court "may consider evidence so long as [it] resolve[s] all factual disputes in [the] plaintiff's favor." *Id*.

Given that MSC does not attempt to controvert Rite-Hite's assertion that MSC has systematic and not isolated activities in this judicial district through the sale of its fans, this factual allegation

must be taken as being true. MSC also does not specifically dispute whether this court has general jurisdiction under the Wisconsin long-arm statute. Such being the case, I conclude that this court has general jurisdiction over MSC under Wis. Stat. § 801.05(1)(d).

The next issue is whether this assertion of personal jurisdiction violates due process. "Due process requires only that in order to subject a defendant to a judgment in personam . . . he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also LSI Indus.*, 232 F.3d at 1375. In determining whether the requirements of due process are satisfied, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King,* 471 U.S. at 474.

"[T]he Due Process Clause requires a court to determine whether a defendant 'should reasonably anticipate being haled into court there.'" *LSI Indus.*, 232 F.3d at 1375 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "[W]hen a corporation 'purposely avails itself of the privilege of conducting activities within the forum State' . . . it has clear notice that it is subject to suit there." *Woodson*, 444 U.S. at 297 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In the case at hand, when taking the factual allegations in Rite-Hite's complaint as being true, MSC's systematic and not isolated activities in Wisconsin establish minimum contacts such that jurisdiction here does not offend traditional notions of fair play and substantial justice. To be sure, MSC argues that jurisdiction offends traditional notions of fair play and substantial justice because MSC, a California business, would suffer an obvious hardship by having to defend this suit in Wisconsin. Moreover, MSC contends that jurisdiction here violates due process because Rite-Hite's

16

dispute is with Delta T. However, these arguments do not address the issue of whether MSC purposefully established minimum contacts in Wisconsin, which is the central question in a determination of whether due process is satisfied. Furthermore, because the issue is whether this court has general jurisdiction over MSC, MSC's specific ties to the cause of action alleged in the complaint are irrelevant.

In sum, the court finds that exercise of personal jurisdiction over MSC comports with the Wisconsin long-arm statute and due process. Given that this court has personal jurisdiction over MSC and subject matter jurisdiction over the action, and that MSC was an original party to the action, it may not be necessary to discuss the issue of whether MSC is a necessary party under Fed. R. Civ. P. Rule 19(a). Nevertheless, as the parties have presented arguments as to whether MSC is a necessary party under Rule 19(a), the court will briefly address the issue.

Under Fed. R. Civ. P. Rule 19(a):

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

The purpose of Rule 19 "is 'to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (quoting *Moore v. Ashland Oil, Inc.*, 901

17

F.2d 1445, 1447 (7th Cir. 1990). Under Rule 19, the court must first determine if a person is a "necessary" party. *CFI of Wis., Inc. v. Hartford Fire Ins. Co.*, 230 F.R.D. 552, 553 (W.D. Wis. 2005). In determining whether MSC is a necessary party, the court must consider: (1) whether complete relief can be accorded without joinder, (2) whether MSC's ability to protect [its] interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless MSC is joined. *Davis Cos.*, 268 F.3d at 481.

As to the first consideration, Rite-Hite contends that it cannot receive the full relief it seeks unless all those with standing to sue based on the patents in question are joined in the action. In this action, Rite-Hite seeks a declaration that (1) its fans do not infringe upon patents co-owned by MSC and Delta T, and (2) that the patents in suit are invalid. Rite-Hite argues that because MSC is a co-owner with substantial rights in the patents in suit and with the ability to bring suit for alleged infringement, MSC's joinder is necessary to provide Rite-Hite with the relief it seeks.

In regards to the second consideration, Rite-Hite contends that MSC has substantial rights in the patents in suit that may be adversely affected by a declaration that the patents are invalid. In support, Rite-Hite cites *Dex Products, Inc. v. Houghteling*, 2006 U.S. Dist. LEXIS 45237, *15 (N.D. Cal. 2006), in which the court held that "the patent owner is necessary where it retains substantial rights in the patent that would be impaired by adjudication of the lawsuit." Rite-Hite argues that MSC has substantial rights in the patent which could be adversely impacted by a declaratory judgment because the agreement between Delta T and MSC grants MSC the right to enforce the patent in combination with Delta T or alone, if Delta T chooses to not participate in an enforcement action.

Finally, as to the third consideration, Rite-Hite contends that it is at risk of incurring multiple

18

lawsuits because MSC has substantial rights in the patents in suit and can bring an action against Rite-Hite if it so chooses. According to Rite-Hite, although MSC has not threatened an infringement suit at this point, it has also neither stated that it will not sue Rite-Hite nor stated that it will be bound by a declaratory judgment.

In response, MSC contends that Rite-Hite can receive the full relief it seeks because the action is simply for a declaration of whether or not the fans infringe on the patents in suit, and this declaration would bind all owners and licensees regardless of whether they were named as defendants in the action. Moreover, MSC argues that there would be no threat of multiplicity of suits because the agreement between MSC and Delta T allows for Delta T to proceed on its own in an enforcement action. MSC, as the "Non-Enforcing Party" under the agreement, would simply take no action in a suit by Delta T.

I conclude that MSC is a "necessary" party under Rule 19(a).[3] To begin, MSC's arguments that there is no possibility of a multiplicity of suits, and that Rite-Hite can receive the full relief it seeks without joining MSC as a party, are unavailing. Although MSC can decline to participate in an infringement suit with Delta T, the agreement does not preclude MSC from participating in a subsequent infringement suit. Moreover, even with a declaratory judgment invalidating the patents in suit, a subsequent litigant who was not a party to the prior action may not necessarily be bound by the earlier declaratory judgment. *See Blonder-Tongue Lab. v. University of Illinois Found.*, 402 U.S. 313, 329 (1971) (holding that due process prohibits estopping litigants who never appeared in

---

[3]In its reply brief, MSC notes that *Dex Products, Inc.* held that when the exclusive licensee was a defendant in the action, the sole owner of a patent was not an indispensable party. Although this may be true, Rite-Hite is only arguing that MSC is a necessary party, and does not contend that MSC is an indispensable party under Rule 19(b).

Case 2:06-cv-01187-WEC    Filed 03/07/07    Page 19 of 21    Document 29

a prior action "despite one or more existing adjudications of the identical issue which stand squarely against their  position.").  As such, although Rite-Hite could obtain a declaratory judgment invalidating the patents in suit without joining MSC as a party, it cannot receive the full relief it seeks because MSC could still conceivably later file suit.

Furthermore, MSC still retains substantial rights in the patents that may be impaired by a declaration that the patents are invalid.  As evidenced by the agreement between Delta T and MSC, MSC has the right to enforce the patents in suit either jointly with Delta T or on its own.  A declaration that the patents in suit are invalid would adversely impact MSC's ability to exercise its right to enforce the patents under the agreement.

Given that MSC is a necessary party under Rule 19(a), the court must next determine whether joinder is feasible.  *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  Under Fed. R. Civ. P. 19(a), joinder is not feasible if venue is improper, the party is not subject to personal jurisdiction, or when joinder would deprive the court of subject matter jurisdiction.  As discussed above, MSC is subject to personal jurisdiction.  Moreover, MSC has not alleged that joinder of MSC would affect subject matter jurisdiction, or that venue is improper.  Such being the case, joinder is feasible, and MSC should be retained as a party in this action under Rule 19(a).

In conclusion, and for all of the forgoing reasons, I find that this court has subject matter jurisdiction over this action, that the exercise of personal jurisdiction over MSC comports with the Wisconsin long-arm statute and with due process, and that MSC is a necessary party under Rule 19(a).  The defendants' motions to dismiss will therefore be denied.

**NOW THEREFORE IT IS ORDERED** that the defendants' motions to dismiss be and hereby are **DENIED;**

20

**IT IS FURTHER ORDERED** the plaintiffs' request for oral argument be and hereby is

**DENIED AS MOOT**.

**SO ORDERED** this 7th day of March 2007, at Milwaukee, Wisconsin.


/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge